LAND, J.
Defendant was a tenant of the plaintiff at $120 per month, under a contract which expired on February 28, 1905. Defendant claimed that the lease was renewed by timely notice given pursuant to the terms of the contract. Plaintiff contended that the notice came too late, and before the expiration of the term took judicial proceedings to evict the defendant at the termination of the lease. This proceeding we held to be premature. 116 La. 51, 40 South. 528. Plaintiff thereupon brought a second suit for eviction, and obtained judgment ordering the defendant to surrender the leased premises.
Defendant appealed, and the judgment was affirmed by the court in November, 1906. See 117 La. 875, 42 South. 356.
During the pendency of the litigation referred to the defendant retained possession of the premises, and from month to month tendered to the plaintiff the sum of $120 as if the contract had been renewed.
In November, 1907, plaintiff instituted the present suit to recover the rental value of the premises from February 28, 1905, to December 1, 1900, a period of 21 months, at the rate of $250 per month, and also $75 for attorney fees and $15.30 for cost of brief in the eviction suit.
Defendant answered that he had retained possession of the premises in good faith, and had tendered the rent at the rate of $120 per month during said period of the 21 months, which said offer and tender the plaintiff refused to accept, although it represented the full rental value of the leased premises.
The case was tried by a jury, which found a verdict for the plaintiff for $2,520, based on a rental value of $120 per month, with 5 per cent, interest from judicial demand.
The plaintiff has appealed, and the defendant has joined in the appeal, praying that he be dispensed from the payment of interest and costs.
Defendant on March 20, 1899, leased the premises for a term of 36 months, commencing on the 1st day of March, 1899, and ending on the last day of February, 1902, at the rate of $120 per month. It was stipulated that the lessee should have a right of renewal for an additional term of three years upon the same terms and conditions, upon written notice to the lessor 60 days in advance.
The premises were leased for the sole purpose of- conducting and operating a beer saloon and bar, wherein the Jackson Brewing Company’s beer alone should be sold, and the lessee bound himself to use in said business not less than three barrels per day of the beer of the lessor, and to pay therefor at the then prevailing prices. On January 3, 1902, the lease was extended for an additional term of three years, with the option of two years more on written notice, as provided in the instrument.
The only question in the ease is as to the rental value of the premises between March 1, 1905, and December 1, 1906. The valuation of $120 per month adopted by the jury has no basis beyond the fact that this amount was agreed upon by the parties to the lease, executed in March, 1899, with the privilege of renewal.
After the eviction of the defendant in 1906 the plaintiff leased the same premises to one Laporte at the rate of $250 per month, and the secretary of the company testified to offers to lease for the same price made by other persons pending the prior litigation between the parties. The plaintiff purchased the premises in 1899 for $16,000, and expended $6,000 more for improvements necessary to put the building in proper condition to *801 serve for the purposes of a beer saloon and barroom. Yet plaintiff leased the premises at the rate of $120 per month for a term of years. Plaintiff, however, expected to make profits by the sale of beer to the lessee, who was bound to take and pay for not less than three barrels per day. In making the lease the principal object of the lessor was to extend the sale of beer manufactured by the company. As a purely rental proposition, based on the capital invested in the property, the owner could have reasonably expected to realize a gross revenue of from 9 to 10 per cent, on the investment. On this basis, which is supported by the evidence, $2,200 per annum would represent a fair return for the occupancy of the property by the defendant. The property, however, increased in value, as shown by the assessments and the evidence. Mr. Danziger, a prominent real estate expert, valued the property at from $26,000 to $30,000, and its rental value from $2,800 to $3,000 per annum. This same witness testified that saloon property brings a higher rental in proportion than similar property leased for other commercial purposes. It is to be noted that the present tenant of the premises has leased, the upper floors for $80 per month. We think that on the evidence we can safely fix the rental valuation at $200 per month for the period between March 1, 1905, and December 1, 1906.
There are a number of reasons why the lease made to Laporte should not be taken as a standard. The lease was by the month, and terminable on short notice by either of the parties. The lessee was a barkeeper without means, and the lessor had to advance him about $4,000 to fit up the premises and to extend him credit on purchases of stock. The payment of the rent under such circumstances depended on the lessee’s success in business. The offers referred to in the testimony of the secretary of the company were made by impecunious men, who could furnish no security for the payment of the rent. Leases to such men come very near being aleatory contracts. The defendant offered no evidence as to the rental value of the premises.
We have no reason to believe that the defendant acted in bad faith. He, relying on a former indulgence, gave notice of renewal 58 days before the expiratiqn of the term of the lease, while the letter of the contract required 60 days. The lessor took advantage of this slip, and the court properly held that he was within his legal rights.
It is therefore ordered that the judgment below be amended by increasing the amount to $4,200, and that as thus amended the said judgment be and is hereby affirmed; defendant to pay costs of appeal.